Mr. Greenspoon, good morning to you. Welcome to the Court. Thank you. Good morning, Your Honor. Please proceed. May it please the Court, this is an appeal for a grant summary of $25,000. The two infringement issues before us are, one, whether two of Google's products contain data references, and two, whether one of those two products contains common address formats among two of its companies. Each issue received no overview, and Google does not seek affirmation from the Court. May it please the Court. I'll read from the record to demonstrate the most stark example of error below. For page 20 of Judge Chabas's opinion, which is at page 20, quote, the tokens of defendant's auto link are akin to a patient identification number in the patent's preferred audience. However, a patient identification number would never, in the case of Judge Chabas's words, would never be used as a data reference in the patent claims because it is far too broad. Now, Your Honor, I'll direct you to the intrinsic record, column 22 of the 298 patent, starting at line 13. Quote, other PRs may include, and would be against, a patient's identification number. And that is from page 1952. Well, the Court below is right to conclude that auto link's tokens and patent's patient identification numbers are alike, but this leads to the opposite conclusion. Your Honor, let me report each address on page 20. Mr. Greenstein, come. Pardon me. I want to ask a question. Who is that? The judge took the data reference definition- Yes, sir. From the Patent 321. Yes, sir. Where it was specifically defined. 321 with a CIP of 567, entire family of patents of issue 889, and 298 with a CIP of 567 with a CIP to 889. Why shouldn't the definition placed in 321 impact the entire family of patents? Several reasons. The first of which is this Court has never held a bill court, and our research will never help it. The new matter content, the additional matter of a CIP is not- Is that really new matter, or is it just a specific definition of data reference, which is included in the entire family of patents? It was only included in the very final patent of this patent family. It is not- Our definition is included in 321. Well, that's disputed to the parties. We don't include it as a definition at all. However, even if it were a- Assuming it were a definition. All right. Assuming even if it were a definition, and assuming even if it does retroactively affect the interpretation afterwards of the change, that still doesn't justify what the District Court did here. And the specific reason is, if you look at that excerpt that we're talking about, the culminating of the 321 patent, it has with it, quote, unquote, this group of- quote, unquote, referred to. In other words, the definition, if you want to call it that, contains the terminology, quote, refer to, unquote. So it doesn't, of itself, define even what it means by something in one record referring to another record. We have to look at that language in the rest of the excerpts of the record. So you do have to go back to the 889 patent, the 298 patent, the 567 patent. If one of those patents has a data reference term in it, which is not defined, but you eventually define it in the 321 patent, why shouldn't the judge be correct in saying that since you defined it in 321, that relates back to all of the other data reference languages, including the family of patents? Because accepting a case value as a definition can relate back. It doesn't give you the final result of the district judge. Refer to is two-word. There's a two-word term within the so-called definition. And that itself has to be interpreted. When you go through and you look at how the inventor used that terminology and it's very broad examples throughout the entire record, you come to the conclusion that all of the negative limitations imputed into that definition by the district court, simply are not supported by the examples throughout the prosecution or throughout the patent panel. So what you're left with is to determine whether something refers to something else in the lexicon of this inventor. You have to go back and look at column 8 of the 889 patent, column 16 of the 889 patent, where something refers to something else by virtue of the fact that it's a text string extracted from a document and used in the process of pointing a link to another record. So I guess to answer the question, even if there were not an issue, even if it had full dignity and related all the way back, it doesn't lead to the result of my assertion. It doesn't allow the issue of all the negative limitations imposed by the district court. So, for example, other examples of leaching. On page 19 of the district court's opinion, the court called the data reference term cannot cover Google's process because Google requires a, quote-unquote, subsequent process to isolate the reference record. Whereas the demonstrator of the breach of the patent showed this to me, it showed that the 889 patent called me, it showed that the 298 patent called me one time. Moving on to court, page 12 found it significant that in that sense, quote, different advertisers will display on a web page even though the content of that page does not change. But as we showed in the reply brief in the 30s, in the 567 patent and Thomas 35 and 36, the patent and device do that exact same thing, and they're still called DRs or data references, which means that time-varying reference records should not be imprinted because those are examples of the inventor himself. He used time-varying reference records, and he still called the text that was used from the initial record a DR or a data reference. A data reference, then, is a much broader term than the bottom of the district court. The district court just didn't credit the very wide use of the terminology throughout the intrinsic record. When a claim concept is described and applied in a variety of ways throughout the intrinsic record, the terminology is the same construction that encompasses all of those uses. We studied a number of cases in that case. But you should point out the most important aspects of these several patents, which include the drug definition and the drug use. Gladly. There's an example in the 89 patent, figure 14C. On the bottom of the figure, you'll see that there's a piece of text, a sermon. 14B and 12? 14C, 1, and 14B. So 14C on the bottom is the raw document. How about the text? It's the text capitalization of the courts on the bottom of that figure. So how about the text in the specification? In the specification? Where were the strongest disclosures supporting their argument? That would be column 16, if I'm not mistaken, of the 89 patent, where there's an actual section of the 89 patent where we hear about this title with the head, quote, parsing to locate data references. So if I'm following this court's precedence and I'm trying to ascertain what the objective evidence show with the impediment by terminology to data references, I immediately draw to this section of the 89 patent because that's the heading. I'm looking down. There's no out-and-out definition where he says the data reference is, quote, unquote. But you see how the inventor has used the terminology or how the inventor has used the concept of data reference. And what's described is the initial record is parsed. Some special text string is extracted, temporarily stored, and used in the process of creating a new record. You're not referring to column 12. In the 889 patent, it's column 16. And in the 889 patent, there's another section which goes into whether subsequent processing should be considered to exclude the new products on the very body of column 8 of the 889 patent. Quote, for some types of data records, the URL cipher 140 will generate addresses compatible with database formatting standards such as SQL or Oracle. And in the context of this entire record, what that means is that an SQL address or an Oracle compatible address is still considered to be an address form for data references in the inventor's record. And a person who's filled in the article would certainly be aware that an SQL or Oracle address will then be subsequently processed in the proceedings of the 298 patent. Yes, Your Honor. The 298 patent, column 29, just before the claims begin, contains a section which describes the threat that the inventor intended. It doesn't show that the inventor intended by the terminology in the record. Any paragraph before the claim that attempts to be broadened, in effect, is an admission that I should have had something earlier. Well, that's his promise. It's different from that. This Court always holds inventors to, I see it in my rebuttal, but I have to finish this question. This Court always holds inventors feet to the fire when they say the invention is this, the invention is that. It's a narrow interpretation. Here's an example where, with great technological detail, the applicant is saying that the invention, quote, may also be used in the case of a proxy server, that's what Google uses, which allows the direct command to request some other devices. So if there's parity, if you hold it against the patentee when the invention is described, certainly, but as a technological example, you should hold it in favor of the reference. But would the reference still be a single reference point, or to a specific record of a record? The single record concept was important as a negative limitation by the district court. The answer is no. In the intrinsic record, the 3-14C, 3-14E example, at this point in Congress, shows one data reference used to form an executive, two completely separate, completely different records. So let's go sequence over to multiple data records. I apologize. Let's sequence over to multiple data records, or just one single data record. Well, if I understand the question, the 567 patent at Columns 35 and 36 shows, for example, time-varying records. So that is the characteristic where the exact records retrieved by a data reference might be only one at a time, but it changes in sequences over time. And that was contemplated and called a DR, called a data reference. Well, if you use an audio reference, would the ISBN number be the data point? The ISBN number would be the data reference, yes or no? No. When that essentially returns back to the server, the identification within that server, would that be linked to that IPN record or to another record of this query? The exact process is described in our briefs, and the ISBN information goes to the Google TV proxy server. The Google TV proxy server extracts that out of the broadcasts and then creates what's called a redirect URL out of the ISBN number's content. There's a template that helps you do that. And then that redirect URL is served from the TV proxy back to the user's computer, that's the audio compliant, or upon the user's computer, we'll redirect the web page off to, for example, Amazon. Thank you. Mr. Sherman. Good morning. Good morning. May it please the Court. Let me begin with Judge Gower's question about the wide definition of the three-point line and how it should not apply here, but it should. There are a couple of reasons for that. Number one is that it is a definition and a related path. I rephrase the term, I'm sticking to the situation that I'm applying on the Goldberg case, and I have it now, even though I'm not an academic historian, of course, this has nothing to do with these facts. Are you referring to column 8, lines 30 to 39, that's the text that you say contains the authoritative definition of a particular reference? That's what the judge quotes. Yes. Yes. Yes. But in that paragraph, for example, look at the second sentence. It says, quote, in the context of a medical facility, an exemplary PR may be as simple as, quote, medication given, end quote, ECG report, also in quotes, or admission NMR heartbeats, end quote. Now, for example, when it says medication given, if I go to the hospital, and I'm there five days each day, I'm given a different medication, there would be five medication given records. In my case, one for each day. So if the data reference is the phrase medication given, it wouldn't refer to only one report, it would refer to five reports. So I'm not sure how this paragraph supports the judge when he construed the data reference to mean that it refers to only a single record. It could never refer to multiple records, like my five medication reports. What's your response to that? A couple of points around that. First of all, if you actually look at the court's claim construction, the construction itself isn't limited to a one-to-one correspondence, quote, from one data record to a single reference record. The court, and it was your review, is that claim construction and not the opinion. Now, I acknowledge that in the opinion, the judge said that I understand some of these claims to actually require a single specific record. And this is a perspective in which there is some variation among the claims that are on our list, that if you look at, for example, claims 1 and 91 of the 3.1 patent, we think those claims are limited to a single specific record. Other claims that use the data reference language probably are not. So we're not taking the position that every claim that uses the data reference language or equivalent language requires this one-to-one correspondence. But the additional correspondence, which I think is most important, is the adjustment pattern. Because whether you say it refers to one record or to a handful of records, the point is it has to refer to a record, at least a record. And what the district court found on these facts, and it's a really serious fact, is that Google's products don't refer to any record. So whether you say it's one record, the claim structure requires one or a few billions of dollars. Are we suggesting that the data reference, the phrase being construed, has to directly identify the records, so an EKG or whatever the medical record would be, a hospital contact? No, directly no. This whole issue of a proxy server really is, again, exciting. When no one is saying anything, you have to have a direct, an immediate link between a phrase and the first record, and a specific record it's referring to. It can go through a proxy server, it can go through a number of methods. The important point is, though, these facts are about a system that imposes an order and a structure on district databases. The system has to know that the reference, over here on the first record, is, in fact, a reference to another record, someplace else. And the system has to be able to benefit knowing that, knowing that that's the record. The system can find that record. When you were saying, let me interrupt, you were saying that the system needs to know that the second record, the medication record for the patient, for example, actually exists. Yes. So, then, I don't understand how the system would know that. How does the system know whether there is a medication record or several medication records for a given patient? Well, the system knows the type of record that exists. So, when it sees, for example, catheterization or that phrase in a document, it says, it looks at that and recognizes that phrase. How does it recognize it? Because it doesn't know. But it recognizes that there are such reports for some patients. But for a given patient, it doesn't know that there is a relevant report in that category. Well, that's right. And when it goes to look for a catheterization report for a particular patient, who doesn't have one, it will come up with nothing. Correct. But it knows exactly where to look. See, that's the whole point of this dimension. It knows where catheterization reports are stored. It knows the format of the addresses and where those reports are supposed to be. And so, it knows where to look for that sort of second record. Maybe there isn't one. That's true. Maybe there's more than one. That could be true, too. Well, where, then, is the dispute between you and the other side as to claiming instruction? Well, they say that the system doesn't need to know the type of reports such as catheterization. Exactly. Exactly. In fact, that's the way the Google systems work because both when you look at AutoLens and when you look at AdSense, particularly AutoLens is the best example, the system submits queries. The browser computer, a query is constructed, which is a question or a command to a Google server. The Google server modifies that into another query, which is ultimately sent back to some third-party site. Now, obviously, we're hoping there's some relevant information there that gets returned. But ultimately, we don't know. And there's no dispute. Those are query strings. They are structured in a way to try to find information, but no one really knows exactly what's there or whether it's there. They say that's good enough that data reference merely is a word or phrase in one document that gets used in the process of looking for related information. So, it effectively, in our view, effectively reads the data reference. What's the distinction between references that ask questions or give commands on the one hand, which you say are not covered, and references that describe a particular type of report or a categorization? Yes, because we think both the plain meaning actually of data reference and certainly the meaning that is used in these patents is that reference means it has to refer to something that you know you know at least by category what it is. It's not the same as saying, well, gee, I recognize this for a categorization report. Let's go see if we can find something that is related to, in some sense, that is related to that phrase. That's a very different thing. And it's really... What about the patent that refers to SRQ queries? Yes. That seems to be within the scope of these protected inventions. And yet there's a little tension between saying that and you're saying, well, queries are outside the scope of the patent. Different things. And with all due respect, I think that this argument doesn't do the microphrase much good without delving into what a SQL query is, as well as SQL. That's just a way of getting a piece of data out of a database that should, first of all, you know what it is, you know where it is, you know how it's stored. There's a difference between that sort of query and the kind of query that your systems do. Yes. Yes. In the state of doing two different types of queries. It's not that all queries are outside the patent. It just depends on what type of query. Well, yes. And more to the point, whether you're querying at least your own database that you control, that you know has these records. Remember, in Google's case, whether you're talking about auto lending or you're talking about assets, the ultimate databases to which the microphrase applies, they're not Google databases. We don't store that information. We don't know how it's stored. So then you're saying that for the patented inventions of these for certain patents, in every case, the data reference has to refer to some source of records that's controlled by or owned by on the premises of the institution running the system, such as a hospital. Globally speaking, yes. The physical location doesn't matter. Of course, the database can be anywhere in the world. But the control. Control. That's controlled by the entity that's running the system. That's right. So as you say, we at Google don't control these databases at all. They're UPS or Amazon or somebody else. Absolutely. Absolutely. How is that query made? How is the query made? To the end. Right. So in the case of let's say modeling is an example. When the a a a word phrase is recognized in the document and a a URL is constructed at that point that uses part of that word and a bunch of other stuff that Google fills in, that query will get sent from a user's computer. This is the processing device they say or the claim. It's sent from a user's computer off to a separate Google server. The Google server gets that query and and strips out some of the information and creates another query which is different. Okay. They're not the same thing. That matters to the common address format points. Then it comes back to the user's browser and it's a redirect. So then the browser takes that and basically as a user takes that and sends it back out to the third party at Amazon. The Amazon you hear exactly. The Amazon server takes that query strips out some of the information and and actually does whatever Amazon wants to do with it. Now, we think Google thinks we have a pretty good idea of some of the things to do with it and that's why we get oh, that's why we direct people to go look there and they can get some earlier info. But ultimately what Amazon returns what page they return we don't know. We don't know how they store their data and we don't know the fact that they're actually there. No one on this record really knows how that data is maintained. That information is made by Amazon. Correct. It's made by Amazon. That's right. That's right. And that's really the way all these distributed databases on the web it's the way they're all done today. They're all done in real time as a result of queries because no one controls even most of the pieces of the system it's not even Google so it's necessary. Why is the government then saying as their legal reference point making the query as to what is available within that data base? Well, because they are querying in the sense it's a different they are querying in the sense of gee, do we have any information that's even related to this keyword? They know. The whole point of these patents is that there is an order and a structure imposed by the system administrator on the person who sets up the database so they know in the case of a particular keyword that there are references of that sort in the system and not only do we know that there are references of that sort but we know exactly where they're stored and how they're stored so, you know, you may still as a matter of data being as a matter of convenience you may address those in various ways you may address them through a processor you may address them using a query but the point is they exist they pre-exist the system knows they're there and there's a correspondence direct correspondence between the reference over here and the ultimate record over here on a gesture at the end of the database review. I touched a little bit on address format I didn't really come up with hyperphrases or remarks so I will go into that in detail unless the court has questions on that particular issue I want to make just one observation I want to go back and look at it that even if you accept the fact that these various URLs are somehow address formats the address format claims require that you look at the first URL and compare it to the whatever URL there is that actually addresses the database at the end of the process so it's the beginning and the end of the process has to create that first address format and hyperphrase processing device in our system is the browser and computer the browser and computer only creates the first URL it does not create the second remember that's what has been tried to argue that the first one and the last one are copied so that's really the end of the copy address format claims and finally if I may our doctrine of footnotes this didn't come up but it did   think it's important to know that there's no particular argument but even apart from that even apart from that if you look at those paragraphs they rely on hyperphrases and not the words that are in the document so    important to know that there's no particular argument but even apart from that even apart from the words that are in the   document it says at page 1403 column 11 starting line 1 that links may be formed in a base document book without even knowing whether those reports were in existence I mean I can't think of anything more